UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

DARRYL BYRON,

                        Plaintiff,

         -against-

ROBERT ERCOLE, Superintendent
GREENHAVEN CORRECTIONAL
FACILITY,

                    Defendant.

-------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

07 Civ. 4671 (BMC)

**COGAN**, District Judge.

      Petitioner *pro se* brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254

(2000), challenging his conviction for Rape in the First Degree, N.Y. Penal Law § 130.35, and

Assault in the Third Degree, N.Y. Penal Law § 120.00. Petitioner lists eight separate claims for

relief in his habeas petition, which may be classified generally as claims of (1) evidentiary error;

(2) prosecutorial misconduct; (3) ineffective assistance of trial counsel; and (4) ineffective

assistance of appellate counsel.

## BACKGROUND

      Following a jury trial in New York Supreme Court, petitioner was convicted of Rape in

the First Degree for his assault of a woman referred to as "Bernadette," and Assault in the Third

Degree for his assault on Sergeant Copeland, an arresting officer. Petitioner was acquitted of a

second rape charge, and other related charges, arising out of a separate incident involving a

second complainant, referred to as "MS." He was sentenced as a second violent felony offender

to determinate prison terms of twenty-five years for the first-degree rape count and one year for

the third-degree assault count to run concurrently with one another.  Additional facts will be set forth below as relevant to the particular points of error that petitioner has raised.

## DISCUSSION

### I. Standard for Habeas Corpus Review

A petitioner in custody pursuant to a state court judgment is entitled to habeas relief only if he can demonstrate that his detention violates the United States Constitution, federal laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if a state court adjudicates a petitioner's federal claim on the merits, a federal habeas court must defer to the state court's determination, unless the state court decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  The Supreme Court distinguishes unreasonable applications of federal law from merely "*incorrect* or *erroneous* application of federal law." Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495 (2000) (O'Connor, J., plurality opinion). For the court to find an "unreasonable application," the "state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001).

## II. Evidentiary Errors

### A. Rape Trauma Syndrome Testimony

#### 1. Background

As to the second rape charge involving complainant MS, one credibility issue at trial was that MS delayed reporting the alleged rape for about one month after she alleged that it occurred. The prosecutor called a psychologist as an expert witness to testify that delayed reporting is consistent with rape trauma syndrome. He did not expressly mention either the complainant or the facts of the case, but testified hypothetically as to why delayed reporting often occurs in rape cases. The trial court instructed the jury that it could consider such testimony only as bearing on MS's credibility in not reporting the alleged rape immediately, not on the issue of whether she had in fact been raped.

On his direct appeal, petitioner's counsel argued that the admission of this testimony was improper because in fact the expert went beyond testifying why a rape victim might delay reporting, and testified as to characteristics of rape victims generally. Petitioner's counsel argued that this evidence bolstered the prosecution's case as to Bernadette, the other complainant, for whom delayed reporting was not an issue. The Appellate Division held that:

> The trial court properly admitted expert testimony regarding rape trauma
> syndrome to aid the jury in understanding the unusual behavior of the first
> complainant [i.e., MS] after the rape occurred. The defendant's argument that the
> expert's testimony impermissibly bolstered the testimony of the second
> complainant [i.e., Bernadette]is unpreserved for appellate review (see CPL
> 470.05[2]) and, in any event, is without merit.

People v. Byron, 2 A.D.3d 453, 453-54, 767 N.Y.S.2d 806 (2d Dept. 2003) (citations omitted).

The Appellate Division thus broke this argument into two points, one pertaining to MS (the "first complainant") and one to Bernadette (the "second complainant"), and then determined to address

the merits of the claim as to MS, apparently because that is the way petitioner's appellate counsel had presented it.

Petitioner's appellate counsel contended that the trial court had violated the New York rule that allows expert testimony to explain delayed reporting of a rape but not offer opinions as to whether a rape had occurred (referred to below as the "Delayed Reporting Rule"). Compare People v. Taylor, 75 N.Y.2d 277, 552 N.Y.S.2d 883 (1990) with People v. Bennett, 79 N.Y.2d 464, 583 N.Y.S.2d 825 (1992). However, appellate counsel or the Appellate Division may not have recognized that this argument, as to MS, was moot. The jury had acquitted as to MS. This means that it did not matter if improper evidence was introduced in connection with the charge pertaining to the alleged rape of MS. The case obviously could not be remanded for a retrial as to MS.[1]

Alternatively, it may be that the first sentence from the Appellate Division's decision quoted above was not actually a ruling, but a background statement to explain why expert testimony had been admitted at all, and an observation that the trial court had acted within the Delayed Reporting Rule in allowing the testimony as to MS.

In either event, regardless of whether the expert testimony as to MS was within or beyond the Delayed Reporting Rule, it is axiomatic that the prosecution was not allowed to offer expert testimony of any scope as to Bernadette. As to her, there was no issue of delayed reporting and no other basis, as part of the prosecution's case, for the jury to consider expert testimony as to her alleged rape.

---

[1] Petitioner's brief on appeal was comprised of a single brief point that did not clearly distinguish between the admission of the testimony as to MS and Bernadette, but argued that by violating the Delayed Reporting Rule, the jury had been able to consider the expert testimony as to Bernadette.

Thus, the only live issue before the Appellate Division, as well as this court, was and is whether the trial court improperly allowed evidence in connection with Bernadette's rape that the prosecution had introduced as part of its claim on the MS alleged rape. That argument is disposed of in the second sentence of the Appellate Division's decision quoted above, in which it held that the claim was "unpreserved for appellate review . . . and, in any event, . . . without merit." Byron, 2 A.D.3d at 453.

## 2. Procedural Bar

A federal court should not address a petitioner's habeas claim if a state court has rejected the claim on "'a state law ground that is *independent* of the federal question raised and *adequate* to support the judgment.'" See Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877 (2002) (emphasis added) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546 (1991)). When a state court dismisses a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar constitutes an adequate and independent ground for the state court's decision. See, e.g., Coleman, 501 U.S. at 729-30, 749-50; Murden v. Artuz, 497 F.3d 178 (2d Cir. 2007).

Even where, as is the case here, the state court rules on the substantive "merits of the federal claim . . . federal habeas is foreclosed where the state court has also expressly relied on the petitioner's procedural default," Murden, 497 F.3d at 191, and that default is an "independent and adequate" basis for the court's decision. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376. There can be no dispute that N.Y. Crim. Proc. Law § 470.05(2) – New York's "contemporaneous objection" rule, upon which the Appellate Division relied – is firmly established and regularly

5

followed in New York criminal practice. See, e.g., Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007).

Although defense counsel objected to the expert's testimony, the ground of the objection was that it exceeded the scope of the Delayed Reporting Rule as to MS. Defense counsel never objected during the testimony that it tended to bolster Bernadette. Therefore, petitioner's present objection was unpreserved on appeal, and the Appellate Division's application of the contemporaneous objection rule constitutes a valid procedural bar.

Procedural default on state law grounds may, however, be overcome by a petitioner who either demonstrates "'cause' for the default and 'prejudice attributable thereto,' or . . . that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038 (1989) (citations omitted). Under the "cause and prejudice" exception to procedural default, both elements must be demonstrated by a habeas petitioner. "Cause" is defined as "some objective factor, external to the defense [that] impeded counsel's efforts to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493, 111 S. Ct. 1454 (1991) (citation omitted). Objective impediments to procedural compliance may exist where a factual or legal basis for a claim was not reasonably available to counsel, or where official interference makes compliance impracticable. Id. (citing Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639 (1986)).

A fundamental miscarriage of justice is characterized as "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." Murray, 477 U.S. at 496. The Supreme Court has delineated a "specific rule" for determining whether the fundamental injustice exception is met: "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely

6

than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536-37, 126 S. Ct. 2064 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851(1995)). "The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." Schlup, 513 U.S. at 328 (quotations and citation omitted). Although this exception requires the reviewing court to look at all the evidence, the petitioner must present new evidence of actual innocence for the fundamental injustice exception to apply at all. See Schlup, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").

"Cause" is not an issue here. First of all, "cause" refers to some external event that prevents defense counsel from objecting, see, e.g., McCleskey, 499 U.S. at 493, and there was not one here. Second, the reason for counsel's failure to object was that there was nothing in the direct testimony of the expert that was linked to Bernadette. The prosecution, defense counsel, and the trial court all understood and agreed that the only purpose for the expert's testimony was to explain MS' delayed reporting.

It was only after conclusion of the direct examination – when her objections that the scope of the expert's testimony exceeded the Delayed Reporting Rule were partly overruled – that defense counsel then made the strategic decision to try to "turn" the expert against Bernadette on cross-examination. In essence, defense counsel, without mentioning Bernadette by name, attempted to get the expert to admit that a woman in Bernadette's position might be

7

fabricating a charge of rape. The strategic decision by counsel to use the expert in this manner cannot constitute "cause" for her failure to object to the expert's testimony as improperly applying to Bernadette. Defense counsel's failure "to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel." Aparicio, 269 F.3d at 91 (citation omitted). And strategic decisions, such as how to conduct cross-examination, are rarely ever valid grounds for an ineffective assistance of counsel claim. See Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002).

As to actual prejudice, there is none here. The trial court specifically instructed the jury that the expert's testimony only pertained to why MS might have delayed in reporting. New York's Delayed Reporting Rule requires such a jury instruction to make sure that the jury understands that this type of testimony goes to explain a possible reason for delayed reporting, not the occurrence of the rape, and that instruction was given here. If one assumes that the jury was able to follow the trial court's instruction that the purpose of the psychologist's testimony was to consider why MS did not report her alleged rape promptly, not to determine if she was actually raped – and the law does so assume, see Greer v. Miller, 483 U.S. 756, 766 n.8, 107 S.Ct. 3102 (1987) (plurality opinion) – it makes no sense to conclude that the jury also erroneously decided to apply that testimony to bolster Bernadette. One would have to conclude that the jury not only violated the instruction by viewing the expert's testimony as opining that MS had been raped, but that it compounded the violation by additionally construing it as opining that Bernadette had been raped.

Furthermore, petitioner has not demonstrated that the procedural default of this claim, or any other defaulted claim presented in his petition, should be excused under the manifest

8

injustice exception. Although petitioner maintains that he is actually innocent, petitioner has not put forth any new evidence of actual innocence which, when considered in light of all the evidence, is so strong that it is more likely than not that no reasonable juror would find petitioner guilty beyond a reasonable doubt.

Finally, even if petitioner had presented credible evidence of actual innocence, federal habeas relief would likely be barred because he has failed to demonstrate a concomitant constitutional violation. A state court's evidentiary rulings, even if erroneous under state law, generally do not present constitutional issues cognizable in a habeas corpus proceeding. See Crane v. Kentucky, 476 U.S. 683, 689, 106 S. Ct. 2142 (1986) ("We acknowledge . . . our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."). To prevail on a claim that an evidentiary error deprived a defendant of due process, a habeas petitioner must show that the error was so "extremely unfair" that it "violates 'fundamental notions of justice.'" Dowling v. United States, 493 U.S. 342, 352, 110 S. Ct. 668 (1990) (quoting United States v. Lovasco, 431 U.S. 783, 790, 97 S. Ct. 2044 (1977); Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (evidence must be "crucial, critical, highly significant") (internal quotation marks omitted); Hughes v. Phillips, 457 F. Supp. 2d 343, 367 (S.D.N.Y. 2006).

Here, the purely hypothetical argument that the jury might have viewed the testimony of the expert – who never mentioned Bernadette by name at all, and did not testify as to the facts of either alleged rape – as the "tipping point" that caused them to credit Bernadette's testimony instead of petitioner's does not rise to the level of "crucial, critical, or highly significant" evidence that presents a federal constitutional violation. Thus, even if petitioner had presented evidence of actual innocence, which he has not, without also demonstrating a constitutional

9

violation, federal habeas relief is barred. See Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853 (1995) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

Ultimately, petitioner's claim here is really a back-door attempt to argue that the claims as to Bernadette and MS should have been tried separately, a point he did not raise on direct appeal. He comes closer to making that argument in his reply brief to this Court: "These two cases should not have been tried together and once the expert witness testified as to why one might delay reporting a rape the testimony should have stopped." His argument is essentially that because the two alleged rapes were tried together, there was some possibility that the jury could be influenced by that fact, something he refers to as a "spillover" effect.

However, the trial court denied petitioner's pretrial severance motion, and that Order was never appealed. It is therefore unexhausted and, because the only means of raising it would have been on direct appeal, it is also procedurally defaulted. When a "'petitioner [has] failed to exhaust state remedies and the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." Aparicio, 269 F.3d at 90 (quoting Coleman, 501 U.S. at 735 n.11 (1991)).

### B. Limiting Cross-Examination

Petitioner also claims that the trial court improperly limited defense counsel's cross-examination of Bernadette, preventing defense counsel from cross-examining Bernadette on her trial testimony that petitioner had hit and choked her. The § 440.10 court found the claim: (1) procedurally barred because it raised an issue that appeared on the record, and thus, should have

10

been raised, but was not, on direct appeal, and (2) substantively without merit, because the trial court had "properly limited cross-examination of the complaining witness regarding subjects such as bruises on her necks, and her prior statements."

As a firmly established and regularly followed procedural rule, § 440.10 of New York Criminal Procedure is an "independent and adequate state ground" for sustaining the judgment. See, e.g., Jimenez, 458 F.3d at 149. Thus, petitioner is entitled to federal habeas review of this claim only if he demonstrates cause and prejudice, or that a fundamental miscarriage of justice will occur if this Court does not consider the procedurally barred claim. Petitioner has not proffered any facts suggesting that appellate counsel's failure to raise this issue on direct appeal should be excused under the "cause and prejudice" exception to procedural default.

Finally, as already discussed, petitioner has not demonstrated evidence of actual innocence, which would permit review of this defaulted claim under the fundamental miscarriage of justice exception.

## II. Prosecutorial Misconduct

### *A. Closing Argument*

Building on his objection to the psychologist's testimony on delayed reporting in rape cases, petitioner argues that the prosecutor, in her closing argument, improperly linked that testimony to Bernadette, thus applying it beyond its limited purpose of explaining why MS might have delayed reporting and using it to bolster Bernadette's credibility. The Appellate Division ruled that this issue was "largely unpreserved for appellate review, as [petitioner] failed to make timely objections and did not seek further ameliorative action after certain objections were

sustained. In any event, no reversible error occurred." Byron, 2 A.D.3d at 454 (citations omitted). In this Court, respondent principally contends that the claim is procedurally barred.

The language used by the Appellate Division is doubly enigmatic in terms of determining the issue to be reviewed and the applicable standard. First, the phrase "largely unpreserved" means that some part of the claim was preserved, but some part was not, and the Appellate Division has not provided any breakdown as to which parts were and were not preserved. Second, the phrase "no reversible error occurred" may mean that error occurred but it was harmless, or it may simply mean that the argument has insufficient merit to support a finding of error.

As to the first issue, courts in this district have declined to apply a procedural bar when the Appellate Division holds that a claim is "largely unpreserved," at least when it also proceeds to address the merits of the claim. See Louis v. Fischer, No. 04-CV-2887, 2007 WL 4198255, at *9 (E.D.N.Y. June 25, 2007); Garcia v. Greiner, No. 01-CV-2470, 2004 WL 943902, at *3 n.2 (E.D.N.Y. Apr. 28, 2004). This seems correct. It would be improper to speculate as to which aspects of a claim the Appellate Division was referring, because for federal courts to apply a procedural bar, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 261-63, 109 S. Ct. 1038 (1989) (quotations and citations omitted).

As to the phrase "no reversible error occurred," courts in this district generally treat this as a merits determination, not a finding of harmless error. See, e.g., Richardson v. Artuz, No. 97-CV-2128, 2004 WL 556688, at *11 (E.D.N.Y. Mar. 22, 2004). I will similarly evaluate the present issue on the merits, under the deferential Williams standard.

This Court's review of prosecutorial misconduct claims is narrowly defined. "Mere trial error" is insufficient to grant relief. Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998). Rather, the standard requires misconduct "so egregious as to violate the defendant's due process rights," id., (citing Donnelly v. DeChristoforo, 416 U.S. 637, 647-48, 94 S. Ct. 1868 (1974)), or stated otherwise, that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464 (1986). The petitioner must show "actual prejudice" in the form of "a substantial and injurious effect or influence in determining the jury's verdict." Id. (quoting Bentley v. Scully, 41 F.3d 818, 823 (2d Cir.1994)); see also United States v. Shareef, 190 F.3d 71, 78 (2d Cir.1999).

Typically, "[r]emarks of the prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct." United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002) (quoting Shareef, 190 F.3d 71, 78 (2d Cir. 1999) (internal quotation marks omitted)). Indeed, "[a]n aggrieved party must show more than mere trial error to secure reversal; he must demonstrate misconduct so egregious that, when viewed in the context of the entire trial, it substantially prejudiced him." United States v. Newton, 369 F.3d 659, 680 (2d Cir. 2004); see United States v. Young, 470 U.S. 1, 11, 105 S. Ct. 1038 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone."); United States v. Rodriguez, 968 F.2d 130, 142 (2d Cir. 1992) ("It is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required.").

Here, it was petitioner's trial counsel who opened the door to linking the expert with Bernadette, both by cross-examining the expert as to the general characteristics of someone who fabricates a rape charge – rather than confining her cross-examination to delayed reporting – and more importantly, by using the expert's testimony during her own closing.

Petitioner's defense at trial was consent; he did not deny having had sex with Bernadette. His theory was that she had become angry after the consensual act because he had dropped her off at a cabstand instead of driving her home. In closing argument, his lawyer summarized Bernadette's response as follows:

> You know that [petitioner] told you that they got into a little argument. ...
> [purporting to quote Bernadette:] ["N]ow you're going to leave me at a cabstand
> whether it was 3, 4 or 5 o'clock in the morning["], she was mad. *Their own*
> *expert said anger sometimes or revenge is possibly a reason to falsify a rape case.*

(Emphasis added).

It was thus defense counsel, following through on her cross-examination of the expert, who first linked the expert to Bernadette rather than limiting him to MS. The prosecutor was able to respond to this comment by pointing to the part of the expert's cross-examination that defense counsel had omitted. "[S]tatements during summation are permissible if they constitute ... a 'fair response to remarks made by the defense counsel during summation.'" Roman v. Filion, No. 04-Civ-8022, 2005 WL 1383167, at *26 (S.D.N.Y. June 10, 2005) (quoting People v. Perez, 18 A.D.3d 480, 480, 794 N.Y.S.2d 439 (2d Dept. 2005)).

Finally, even if the prosecutor exceeded the scope of fair comment, petitioner has failed to show that the error was so egregious as to cause him substantial prejudice. The prosecutor's closing argument was lengthy, covering nearly seventy pages of transcript, of which this discussion constituted two or three. The trial judge specifically instructed the jury that the expert was only being offered on the issue of delayed reporting and that the arguments of counsel were not evidence. Most importantly, the trial court sustained most of the objections that defense counsel made to this argument. Based on the totality of the circumstances, I cannot say that the prosecutor's comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Wainwright, 477 U.S. at 181. It follows that the Appellate Division's

decision rejecting this claim was not contrary to, nor an unreasonable application of, Supreme Court authority.

### B. Use of False Evidence

The crux of petitioner's argument is that the prosecutor failed to advise the jury during closing that there was a DD-5 (police report) allegedly stating that Bernadette had consented to oral sex with petitioner. Since petitioner does not deny receipt of this DD-5 in pretrial discovery, I cannot see even a colorable claim of prosecutorial misconduct based on having to advise the jury of the existence of this report; the claim is better considered as part of his ineffectiveness of trial counsel claim for failing to use the DD-5 in cross-examining Bernadette, which is discussed below.

### III. Ineffective Assistance of Trial Counsel Claims

Petitioner claims his trial counsel was ineffective for: (1) failing to object to the expert's testimony; (2) conducting an improper cross-examination of prosecution's expert, which bolstered Bernadette's testimony; (3) failing to adequately object to amendment of the indictment; (4) failing to impeach a witness with a prior statement.

Assuming that petitioner's ineffective counsel claims are not procedurally barred from habeas review, the merits of petitioner's claims are assessed according to the Supreme Court's test enunciated in Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052 (1984). To prevail on a Sixth Amendment claim of ineffective assistance of counsel, petitioner must demonstrate that (1) counsel's performance "fell below an objective standard of reasonableness" as measured under "prevailing professional norms," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688.

As to the performance prong of Strickland, petitioner faces "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] might be considered sound trial strategy." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (citing Strickland, 466 U.S. at 689). Criminal defendants face a steep burden in proving deficiency of counsel, and in "gauging the deficiency, the court must be 'highly deferential,' must 'consider all the circumstances,' must make 'every effort . . . to eliminate the distorting effects of hindsight,' and must operate with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .'" Lindstadt v. Keane, 239 F.3d 191, 198-99 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 688-89, 690) (internal citations omitted).

Under Strickland's second prong, the prejudice prong, "'[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. To merit habeas relief, the defendant must show that the deficient performance prejudiced the defense.'" Lindstadt, 239 F.3d at 204 (quoting Strickland, 466 U.S. at 691). In this context, "reasonable probability" is defined as a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The prejudice prong does not simply contemplate the outcome of a judicial proceeding, but it assesses the impact of counsel's performance on the overall integrity and fairness of the proceeding. See Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S. Ct. 838 (1993).

### A. *Failure to Object to Expert Testimony*

The state court found this claim: (1) procedurally barred pursuant to § 440.10 because it could have been, but was not, raised on direct appeal, and (2) substantively without merit

16

because the expert's testimony had been properly admitted as affirmed by the Appellate Division in petitioner's direct appeal.

Section 440.10 of New York Criminal Procedure is an "independent and adequate state ground" for sustaining the judgment, see, e.g., Jimenez, 458 F.3d at 149, and therefore, petitioner is not entitled to federal habeas review on this claim, unless he demonstrates cause and prejudice, or that a fundamental miscarriage of justice will occur without federal review. Petitioner has failed to demonstrate either, and in any event, because I have already found that the expert testimony was properly admitted, there could be no ineffective assistance of counsel claim arising from counsel's failure to object to that testimony.

### B. Conducting an improper cross-examination

The state court's disposition of this claim was a single statement: "[t]he application is denied in all other respects." This constitutes adjudication on the merits, and is subject to Williams review. See Murden, 497 F.3d at 198 (holding that even if the state court fails to precisely specify the claims deemed meritless and why those claims are meritless, "an unexplained ruling on the merits is . . . entitled to AEDPA deference.").

Petitioner's claim that counsel was ineffective for conducting an improper cross-examination of the state's expert on Rape Trauma Syndrome, which allegedly bolstered Bernadette's testimony, fails the performance prong of Strickland for several reasons. Eliciting the testimony was purely a tactical decision, a decision that did not fall outside the wide ambit of reasonable professional judgment. The tactic may not have succeeded, but when determining the constitutional dimensions of trial representation "courts should not confuse true ineffectiveness with losing trial tactics or unsuccessful attempts to advance the best possible defense." Henry v. Poole, 409 F.3d 48, 58 (2d Cir. 2005).

17

Petitioner's claim also fails under the prejudice prong of Strickland. Petitioner has not and cannot demonstrate any prejudice that arose from defense counsel's cross-examination of the expert, because the cross-examination was not improper.

### C. Objecting to Indictment's Amendment and Variance

Petitioner's claim that counsel was ineffective for failing to object to the amendment of the indictment stems both from an actual amendment of the indictment, and what petitioner asserts to be a variation between the indictment and the evidence presented at trial. This claim was first raised by petitioner in his § 440.10 proceeding, and was summarily dismissed by the state court holding that "[t]he application is denied in all other respects." Because the state court opinion does not assert a procedural bar against this particular claim, the state court's opinion is construed as a holding on the merits, and is reviewed under the deferential Williams standard for an unreasonable application of Strickland. See Murden, 497 F.3d at 198.

Petitioner's first argument here is that counsel was ineffective because she did not object to the actual amendment of the indictment until prompted by the court, and then proceeded to inadequately support her objection. The amendment was proposed by the prosecution, during pretrial proceedings, to fix a clerical error in the indictment – there were two identical first degree rape counts for MS, instead of one rape count for MS and one rape count for Bernadette. The trial court granted leave to amend the indictment, finding the change corrected an obvious clerical error, did not represent a change in the prosecution's case theory, did not differ from the testimony heard by the grand jury, and that petitioner could not claim that he was surprised by the amendment.

It is no surprise that defense counsel's objection was unsuccessful. New York law permits amendment of criminal indictments to correct clerical errors of names at any time prior

18

to or even during trial as long as the amendment does not change the theory of prosecution's case. N.Y. Crim. Proc. Law § 200.70(1). Defendant does not and cannot claim that he was surprised by the indictment's amendment to correct this obvious clerical mistake, or that the amendment constituted a change in the prosecution's case theory. See LanFranco v. Murray, 313 F.3d 112, 119-20 (2d Cir. 2002) (holding that counsel's failure to object to amending the date upon which fraud was committed did not constitute deficient representation because the amendment was valid under New York law). Because there was nothing objectionable for defense counsel to raise, the state court's rejection of this claim cannot be deemed an unreasonable application of the ineffective counsel standard set forth in Strickland.

Petitioner's related, more subtle argument is that the "amending of the indictment was improper when the testimony changed."[2] The crux of his argument, as presented to the state court, is that certain evidence presented at trial led to an unconstitutional variance of the indictment, which deprived petitioner of his rights under New York law to indictment by a grand jury and to fair notice of the charges being brought against him. Based on that, he asserts here that his trial counsel was ineffective for not making a broader objection at the time of trial.

The New York State Constitution provides that state defendants charged with "capital or otherwise infamous crime[s]" have both a right to indictment by a grand jury, and a right to be informed as to the nature of the accusation against them. N.Y. Const. art. 1, § 6; see also N.Y. Crim. Proc. Law § 210.05; N.Y. Crim. Proc. Law § 200.50.[3] Despite its state law origins,

---

[2] Although it is not entirely clear whether petitioner is pressing this claim in the instant habeas corpus petition, he did raise it in his § 440.10 motion and I will therefore assume he intended to assert it here. See Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995); Nova v. Artus, No. 05 Civ. 8437, 2007 WL 1988456, at *7 n.15 (S.D.N.Y. July 6, 2007) (finding that because the "the habeas petition lacks detailed facts in support of this claim, we rely upon the relevant substantive claims made in the 440.10 motion.").

[3] The New York prohibition against indictment variance is similar to the Fifth Amendment's grand jury clause, which prohibits "constructive amendment" of an indictment occurring through evidence or "jury instructions that

19

petitioner presents a potentially valid claim for ineffective assistance of counsel under the Sixth Amendment, which is violated when counsel fails to raise a significant and obvious state law claim. LanFranco, 313 F.3d at 118 (citing Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

The variance petitioner asserts arose from Bernadette's trial testimony that petitioner forcibly pushed her to the back of the van, hit, choked and cursed at her, as well as testimony regarding a knife being present in petitioner's van. Because this testimony was never presented to the grand jury or contained in the indictment's factual allegations, petitioner argues that his right to effective notice and a grand jury indictment was violated.

People v. Grega, 72 N.Y.2d 489, 496, 534 N.Y.S.2d 647 (1988), involved an indictment charging the defendant with rape and other sexual offenses through the use of physical force. Despite the language of the indictment, the trial court instructed the jury that the element of forcible compulsion could be established by either proof of physical force, or the use of express or implied threats of physical injury or death.[4] The New York Court of Appeals first held that defendant's right to notice of the charges against him had not been violated because the indictment had alleged that the defendant had accomplished the crime "through the use of physical force, and defendant's use of physical force was precisely what the complainant described in her testimony." Grega, 72 N.Y.2d at 493-94. The Court also held that the

---

'modify the essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury.'" LanFranco, 313 F.3d at 118 (quoting United States v. Clemente, 22 F.3d 477, 482 (2d Cir. 1994)). But application of the Fifth Amendment's grand jury clause is improper here because this provision of the Bill of Rights has not been incorporated against the states through the Fourteenth Amendment. LanFranco, 313 F.3d at 118 (citing Branzburg v. Hayes, 408 U.S. 665, 688 n.25, 92 S. Ct. 2646 (1972)).

[4] A person is guilty of rape of in the first degree when they engage in sexual intercourse with another person through "forcible compulsion." N.Y. Penal Law § 130.35. Forcible compulsion occurs through either (1) physical force, or (2) express or implied threats to one's physical well-being or the well-being of another. See N.Y. Penal Law § 130.00 (defining forcible compulsion).

defendant was not deprived of the right to be tried on the charges determined by the grand jury, because there had been no evidence produced at trial from which the trial jury could have inferred that defendant had accomplished the sexual offenses through use of express or implied threats.

Count Six of petitioner's indictment, as read to the jury, stated: "The defendant on or about November 29th 1998 in the county of Queens being male engaged in sexual intercourse with Bernadette Jackson, a female, by means of forcible compulsion." Petitioner's indictment is broader than the indictment in Grega because it does not limit forcible compulsion's definition solely to physical force. "[W]hen the indictment 'contains a broad allegation,' the prosecution may present alternative theories that fall within that allegation." LanFranco, 313 F.3d at 118 (quoting People v. Foley, 210 A.D.2d 163, 163, 620 N.Y.S.2d 956 (1st Dept. 1994)). The prosecution, in accordance with the broad language of the indictment, was allowed to present evidence that showed either physical force or the use of express or implied threats to prove forcible compulsion.

Petitioner cannot claim that his right to notice of the accusations against him has been violated. Bernadette's testimony regarding petitioner's use of physical force did not vary from the indictment; like Grega, the "defendant's use of physical force was precisely what the complainant described in her testimony." Nor did Bernadette's testimony regarding a knife in petitioner's van constitute a variance, where the allegation of express or implied threats was necessarily encompassed by the indictment's broad use of the term "forcible compulsion." Any weight that the jury gave to the knife's presence in the car was only for determining whether the defendant had used forcible compulsion. Moreover, petitioner at all times was aware that he was being tried for the forcible rape of Bernadette, as established either through petitioner's use of

21

deprived of the right to fair notice.

Petitioner focuses on the fact that the grand jury had not heard all of the facts to which Bernadette testified at trial. It did not have to. There is no requirement that a grand jury hear every piece of evidence that supports the case; the question is whether the language of the indictment gave defendant fair notice of the charge. "Since there was no variance between the trial evidence and the *language* of the indictment, any discrepancy between the trial and grand jury *evidence* is irrelevant." People v. Medina, 37 A.D.3d 240, 241, 830 N.Y.S.2d 76 (1st Dept. 2007). There was no basis for defense counsel to make a variance objection because petitioner "was in fact tried and convicted of only those crimes and theories charged in the indictment." Grega, 72 N.Y.2d at 497.

### D. *Failure to Impeach Witness with Prior Statement*

Petitioner's fourth claim is that counsel was ineffective for failing to impeach Bernadette with a prior statement contained in a DD-5 that allegedly differed from Bernadette's trial testimony. Specifically, petitioner maintains that Bernadette's first account to police included a statement that she had consented to oral sex with petitioner. The record indicates that the DD-5 petitioner refers to was prepared by Detective Gioia (f/k/a Detective Laughlin) upon interviewing Bernadette at the beginning of the police investigation.

### 1. *Procedural Bar*

The state court denied the claim, finding it was (1) procedurally barred under N.Y. Crim. Proc. Law § 440.10(2)(c) because it was "on the record" and "defendant could have raised [it] on

22

his direct appeal"; and (2) substantively was meritless because "complainant was extensively and thoroughly cross-examined by defense counsel at the time of her testimony."

New York law holds that when evidence supporting a claim is on the record and reviewable by an appellate court on a defendant's direct appeal, but the defendant fails to raise the claim, then the claim cannot be brought later in a post-conviction motion under § 440.10. Thus, where a claim of ineffective assistance of counsel is clearly established in the trial record, a state court's reliance on subsection (2)(c) provides an independent and adequate procedural bar to federal habeas review. See, e.g., Murden, 497 F.3d at 196.

However, the New York Court of Appeals has long recognized that not every claim of ineffective assistance of counsel will be "sufficiently presented in a trial record," and "a Section 440.10 proceeding is often superior to a direct appeal for asserting such claims." Murden, 497 F.3d at 196. The New York Court of Appeals has observed that "in some cases" it is "essential that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under C.P.L. 440.10." People v. Brown, 45 N.Y.2d 852, 854, 410 N.Y.S.2d 287(1978); see also People v. Harris, 109 A.D.2d 351, 491 N.Y.S.2d 678 (2d Dept. 1985).

Because many ineffective counsel claims are based on matters outside the record, and not reviewable on direct appeal, New York law requires that such claims "'be pursued by way of a CPL 440.10 motion.'" Quinones v. Miller, No. 01 Civ. 10752, 2003 WL 21276429, at *21 (S.D.N.Y. June 3, 2003) (quoting People v. Kazmirski, 299 A.D.2d 826, 827, 749 N.Y.S.2d 194 (4th Dept. 2002)); see also Bonilla v. Portuondo, No. 00 Civ. 2369, 2004 WL 350694, at *15 (S.D.N.Y. Feb. 26, 2004) (holding that because "an attorney's failure to locate and investigate witnesses does not adequately appear on the record of the criminal proceedings, the petitioner

23

will not be precluded under § 440.10(2)(c) from bringing a motion to vacate based on his failure to raise the claim on direct appeal."); People v. Mendoza, 298 A.D.2d 532, 533, 748 N.Y.S.2d 666 (2d Dept. 2002) (holding that where defendant's ineffective trial counsel claim "involves affidavits and other matters dehors the record which could not be reviewed on direct appeal . . . the defendant was not procedurally barred from moving pursuant to CPL 440.10 to vacate the judgment of conviction.").

Neither respondent nor the state court opinion dismissing this claim has shown that subsection (2)(c) of § 440.10 provides an adequate state procedural bar to petitioner's ineffective counsel claim for failure to cross-examine Bernadette with a DD-5 that was never part of the trial record. "[W]here the ineffective assistance of counsel claim is not record-based, federal habeas courts have held that the rule of CPL § 440.10(2)(c) is not adequate." Serrano v. Senkowski, No. 02 Civ. 8708, 2004 U.S. Dist. LEXIS 18936, at *35-36 (S.D.N.Y. Sept. 23, 2004) (quotations omitted). In sum, I find the state court's opinion regarding a procedural bar to conflict with New York and federal law, and inadequate to support the judgment.

### 2. Merits

Despite the state court's improper reliance on a procedural bar, the state court independently based its dismissal on reviewing the merits of petitioner's claim, finding the claim substantively meritless because Bernadette was "extensively and thoroughly cross-examined at the time of her testimony." This ruling is subject to the deferential standard of review under 28 U.S.C. § 2254(d), and the state court's opinion will be reviewed for an unreasonable application of Strickland, the clearly established federal law relevant to petitioner's ineffective counsel claims. See Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006).

Petitioner argues that trial counsel was ineffective for failing to use the DD-5 to impeach Bernadette's testimony. However, it is readily apparent, upon reviewing the DD-5, that the DD-5 corroborates Bernadette's testimony of forcible rape by the petitioner far more than it impeaches it, and that defense counsel's decision not to use the DD-5 was a more than tolerable tactical decision. The DD-5 indicates that from the very start Bernadette told petitioner she did not want to have sex with him, and when petitioner asked a second time, Bernadette again told petitioner no. It then goes on to describe the rape in a way fully inconsistent with petitioner's defense of consent.

Petitioner bases his entire argument on a single phrase that "after a short time" from when he tried to have oral sex with her, Bernadette told petitioner to stop. Petitioner seems to think that this single phrase is enough to establish his theory of consent. But the DD-5 does not say that she requested it. The clear implication of the report is that petitioner initiated the act and she told him to stop. The use of the phrase "short time" instead of "immediately" would have made for poor cross-examination of Bernadette, as it cannot reasonably be viewed as consent. Counsel's decision not to argue with Bernadette over the ambiguous language regarding oral sex – language chosen by Detective Gioia, not Bernadette – to reflect Bernadette's account of the night was ultimately a tactical decision. See Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002) (quoting United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)). And even if Bernadette did not say "stop" fast enough to suit petitioner, that fact doesn't equate to consensual intercourse.

Most importantly, the remaining, detailed statements in the DD-5 further corroborated Bernadette's trial testimony that petitioner forcibly raped her. Defense counsel knew she couldn't use the DD-5 statement because it would be too damaging to petitioner's theory of

consent. Petitioner has failed to demonstrate that defense counsel's decision not to use the DD-5 was anything other than a well calculated trial tactic, or that this decision was so unreasonable as to constitute ineffective assistance of counsel. Nor has petitioner shown that counsel's decision not to use the DD-5 was so prejudicial as to compromise the integrity of the entire trial.

## IV.    Ineffective Appellate Counsel Claims

Petitioner claims that appellate counsel was ineffective for failing to raise on direct appeal objections to: (1) the trial court limiting the ability of defense counsel to make objections; (2) the amendment of the indictment; and (3) cumulative prosecutorial misconduct throughout the trial. These claims were previously brought in petitioner's unsuccessful Writ of Coram Nobis.[5] The Appellate Division denied the writ in one sentence: "appellant has failed to establish that he was denied the effective assistance of appellate counsel." People v. Byron, 36 A.D.3d 932, 933, 827 N.Y.S.2d 672 (2d Dept. 2007) (citations omitted).

This Court reviews the Appellate Division's opinion to determine whether there was an unreasonable application of Strickland, which is also the standard for reviewing ineffective appellate counsel claims. See Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000). "In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." Clark, 214 F.3d at 322 (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)). Appellate counsel is expected to focus on key issues while "winnowing out weaker arguments . . . focusing on one central issue if possible . . . ." Jones v. Barnes, 463 U.S. 745,

---

[5] Petitioner also claimed in his Writ of Coram Nobis that appellate counsel erred by failing to raise his numerous ineffective assistance of trial counsel claims on direct appeal. However, petitioner has not raised any of these arguments in his habeas petition.

751-52, 103 S. Ct. 3308 (1983). Accordingly, reviewing courts should not second-guess the reasonable professional judgments of appellate counsel as to the most promising issues for appeal, nor impose on appellate counsel a duty to raise every possible claim. See id. at 754.

### A. Limiting Objections

Adding to petitioner's other claims of evidentiary error, petitioner asserts that the trial judge "continuously prevented" defense counsel from making timely and specific objections. As a preliminary matter, this argument is slightly different from the argument raised in petitioner's Coram Nobis, which alleged that the court's improper limitation on making objections occurred during summation, and not continuously during the trial. This Court will confine its consideration to what was raised in the Coram Nobis.

There is nothing in the record suggesting that the trial court improperly limited defense counsel's ability to make objections during any other period of the trial. During closing arguments and sometimes during testimony, the trial court did enforce a rule prohibiting "speaking objections." It thus permitted the attorneys to say only the word "objection," not to detail the grounds upon which the objection was made. Specifically, the trial court instructed both lawyers that anything beyond the word "objection" would be considered "colloquy". The trial judge was clear, however, that this ruling would not preclude counsel from addressing the objections more fully through a side-bar, out of the hearing of the jury.

There was of course nothing wrong with the trial court prohibiting speaking objections, which often are thinly veiled vehicles for disrupting an adversary's examination or making a counter-argument to the jury during an adversary's closing. The restriction was particularly appropriate in this case, as the court allowed defense counsel to air the basis for her objection more fully through side-bar, when needed, and allowed defense counsel full reign in moving for

a mistrial or seeking instructions at the conclusion of the prosecutor's closing. That is precisely what defense counsel did. Additionally, for the numerous objections by defense counsel that were sustained, the trial court gave prompt curative instructions to the jury when needed.

Finally, and most significantly, is the fact that out of defense counsel's ninety-nine objections, there is not one that petitioner can point to where defense counsel was precluded from adequately preserving an objection for appeal. There was no prejudice, and no claim that the trial was fundamentally unfair on this basis. Thus, there was no meritorious claim for the Appellate Division to consider.

### B. *Amendment of Indictment*

Petitioner argues that appellate counsel was ineffective for failing to raise the improper amendment of the indictment. As explained above, the indictment's actual amendment to change the name of the complainant in Count Six was proper under New York law and thus, petitioner cannot claim ineffective appellate counsel on this issue. Additionally, petitioner's argument that trial counsel was ineffective for failing to object to variance in the indictment has been shown to be unavailing.

### C. *Cumulative Prosecutorial Misconduct*

Petitioner's final ineffective appellate counsel claim is that appellate counsel was ineffective for failing to raise a claim of cumulative prosecutorial misconduct. Petitioner claims that the misconduct that appellate counsel failed to assert on appeal included the prosecutor's (1) references to a knife being at the scene; (2) attempt to shift the burden to defense, and finally; (3) failure to alert the court to false testimony given by Bernadette.

28

As dealt with above, the prosecutor's statements regarding petitioner's knife do not constitute an unconstitutional variation or amendment of the indictment under New York law, and therefore, appellate counsel acted reasonably in not making this claim on direct appeal.

Petitioner's second argument regarding the prosecutor's attempt to shift the burden is unexhausted because it was not raised in petitioner's Coram Nobis. At this point, this claim would be deemed procedurally defaulted by any New York State court, and this Court must find the claim procedurally barred. See Aparicio, 269 F.3d at 90 (quoting Coleman, 501 U.S. at 735 n.1) ("[W]hen 'the petitioner [has] failed to exhaust state remedies and the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would not find the claims procedurally barred', federal habeas courts must deem the claims procedurally defaulted.").

Petitioner's third and final argument here is that appellate counsel was ineffective for not raising a prosecutorial misconduct claim on the basis that the prosecutor failed to alert the court to "false testimony" given by Bernadette. This argument appears to arise from Bernadette's testimony and the contents of the DD-5. As stated above, there was no prosecutorial misconduct because the DD-5 was given to petitioner pretrial.

## CONCLUSION

The application for relief is denied and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a

29

certificate of appealability shall not issue.  In addition, this Court certifies pursuant to 28 U.S.C.

§ 1915(a)(3) that any appeal would not be taken in good faith.  <u>See</u> <u>Coppedge v. United States</u>,

369 U.S. 438, 444, 82 S.Ct. 917 (1962).

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/

U.S.D.J.

Dated: Brooklyn, New York
     July 16, 2008